```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   TIRE ENGINEERING &
     DISTRIBUTION,
 4
                    Plaintiff,
 5
              v.                              13 CV 6209 (JMF)
 6
     INDUSTRIAL & COMMERCIAL BANK
 7   OF CHINA,

 8                  Defendant.

 9   ------------------------------x
                                              New York, N.Y.
10                                            October 16, 2013
                                              3:00 p.m.
11
     Before:
12
                         HON. JESSE M. FURMAN,
13
                                              District Judge
14
                              APPEARANCES
15
     STARR & STARR
16       ATTORNEY for Plaintiff Tire Engineering
     BY:  STEPHEN STARR
17
     WEISBROD, MATTEIS & COPLEY
18       ATTORNEY for Plaintiff Bearcat Tire
     BY:  WILLIAM COPLEY
19
     ALLEN & OVERY
20       Attorney for Defendant I & C Bank of China
     BY:  ANDREW RHYS DAVIES
21        BRADLEY PENSYL

22

23

24

25
```

1              (Case called)
2              MR. STARR:  Stephen Starr for the plaintiff.  I have
3     here my cocounsel, William Copely, and I would like to move for
4     his admission pro hac vice to appear before your Honor today.
5              THE COURT:  I will grant it for today's purposes, but
6     if you intend to appear beyond today, then you need to file a
7     pro hac vice motion in the formal manner.  If you have any
8     questions about that, you can contact the clerk's office, but
9     for today's purposes, I will grant it.
10             MR. COPELY:  Thank you.
11             THE COURT:  For the defendant.
12             MR. DAVIES:  Andrew Rhys Davies.  I'm here with my
13    colleague, Bradley Pensyl, for Industrial & Commercial Bank of
14    China.
15             THE COURT:  Good afternoon to you.  We are here
16    largely in connection with your letter, Mr. Davies.  I can't
17    remember if it was from you or not.
18             Do you want to fill me in on where things are?
19             MR. DAVIES:  Yes.  We had written to your Honor and to
20    Judge Patterson in Part One because Industrial & Commercial
21    Bank of China had received a restraining notice in a
22    postjudgment collection matter.  It purports to apply to
23    accounts outside of New York.  The bank has informed the
24    plaintiff/judgment creditor that it has no accounts in New
25    York.  We think that this relief is barred by the separate

1   entity rule and, in fact, these judgment creditors litigated
2   this very issue against another Chinese bank before Judge
3   Carter.  Judge Carter found in favor of the Bank of China,
4   dismissed the complaint, and the judgment creditors took an
5   appeal.  We argued that to the Second Circuit on Friday of last
6   week, and that's under submission before the Second Circuit
7   panel.
8           We did meet and confer in compliance with your Honor's
9   order.  And we learned that, in fact, the plaintiff/judgment
10  creditor doesn't intend to serve the complaint.  It apparently
11  recognizes that the issue is before the Second Circuit, and
12  that's putting words in their mouths, that while Judge Carter's
13  order remains, then they can't have the turnover order they're
14  looking for.
15          We are ready to move for relief from the restraining
16  notice.  We understand that we need to do that under applicable
17  law.  We can't simply ignore it, even though, in our view, it's
18  clear, it doesn't apply to accounts outside of New York.  We're
19  ready to file that motion.  We discussed yesterday filing it on
20  October 25, which would be a week from Friday.  Plaintiff would
21  like two weeks to respond, and we would respectfully request a
22  week to reply.
23          THE COURT:  I take it, the idea would be that this
24  would be litigated in the context of the miscellaneous docket
25  number, not the 13 CV 6209 that was originally assigned to me.

1    Is that correct?
2             MR. DAVIES:  I think that would be right because the
3    complaint won't be served, and so we only have the restraining
4    notice issue.
5             THE COURT:  Mr. Starr, or anyone who wants to speak.
6             MR. COPELY:  Actually, if I can address that.  William
7    Copley.  Good afternoon.
8             Just to give you a little bit of background about this
9    case and about what's gone on.  My client is a 74-year-old
10   inventor and businessman who obtained a $26 million judgment
11   against several foreign companies that had stolen his
12   intellectual property and copied his designs and basically
13   destroyed his business.  He obtained a $26 million judgment,
14   and that's what we're trying to enforce.  Some of the
15   wrongdoers have accounts in several Chinese banks, the Bank of
16   China, which was the case that was before Judge Carter, as well
17   as the Industrial & Commercial Bank of China, which is the
18   defendant, the garnishee here.
19            What we're trying to do in this case, there was one
20   important point that I think Mr. Davies left out in his
21   recitation of what happened in front of Judge Carter; and that
22   is, Judge Carter specifically left a restraining notice in
23   effect in that case pending appeal to the Second Circuit's
24   ruling.
25            The whole point of the restraining notice under 5222

is so that the assets can be held in place while all of the different claims can be assessed and all of the objections are weighed out. That's all we're trying to do in this case with the restraining notice.

And Judge Carter specifically left it in place pending appeal because of both the strength of our arguments. He said, notwithstanding his decision, there's a substantially likelihood we'll prevail on appeal. He also noted that we'd be irreparably harmed if the bank were allowed to release the assets before there was a definitive ruling on this issue of law that's been very much disputed. We have what we think are six federal district court decisions going our way. I believe there are four federal district court decisions going their way.

One important thing is in every single one of the federal district court decisions going their way, the district court in that case actually entered an injunction requiring the bank to hold onto the assets until the Second Circuit could rule. Judge Preska did it in the *Shaheen Sports* case. Judge Rakoff did it in *Motorola v. Uzan*. Everybody agrees these assets should just stay in place until the Second Circuit can rule.

As Mr. Davies said, we argued this issue to the Second Circuit on Friday. We are hopeful to have a ruling soon. Our view is certainly we're not asking you to do anything Judge

1   Carter didn't allow us to do, which is to use a restraining
2   notice to keep the assets in place until the Second Circuit can
3   give us a definitive ruling on what New York law is.
4   Therefore, we don't think there's a collateral estoppel
5   problem.  Even if there were a collateral estoppel issue, Judge
6   Carter clearly ruled that all of the elements for the Court to
7   exercise its equitable power to stay any result would be
8   implicated and properly applied.
9              THE COURT:  Do you agree in the Second Circuit's
10  decision on the Judge Carter case will be dispositive of the
11  issues in this case?
12             MR. COPLEY:  Unless they surprise me on how they write
13  their opinion, I would expect it would be.  If the Second
14  Circuit says we're not entitled to the turnover, the separate
15  entity rule bars that, we're not going to serve the complaint.
16  We'll dismiss it.  But if it says we're entitled to the money,
17  we want everything to be in place, so we can then pursue the
18  turnover of the assets that my client would be entitled to.
19             THE COURT:  Thank you.  That was very helpful.
20             Mr. Davies, number one, do you agree?  Obviously, you
21  would argue, as you did in your letter, and it sounds like
22  there's no dispute, that if the Second Circuit affirms Judge
23  Carter and says that the separate entity rule bars their going
24  after these assets, then it sounds like you're free and clear,
25  and they're going to walk away from this.  Now my job gets

1  easier.

2            Now, if they go the other way, do you concede that you
3  would not have a basis for the motion that you intend to bring
4  and/or the motion to dismiss if or when you're served on this
5  ground; in other words, I guess what I'm trying to get at is
6  whether the Second Circuit's decision will be dispositive?

7            MR. DAVIES:  I would expect the Second Circuit's
8  decision will be dispositive on this issue, yes.  But may I
9  address just the question of the restraint that Mr. Copley
10 mentioned?

11           He is talking about a restraint pending further action
12 in the Second Circuit.  I think Judge Carter's case -- that's
13 very troubling for ICBC because, first of all, we don't think
14 there's a basis for it.  To get an injunction from a federal
15 court, you have to make a motion of showing and they haven't
16 made that showing.

17           And in this case, Chinese law doesn't allow Chinese
18 banks to freeze accounts in China unless there's an order from
19 a Chinese court.  So, we'd be caught in this double-liability
20 situation whereby we could be ordered to maintain an account
21 and also be required, under Chinese law, to pay that to the
22 account-holder.

23           We think if they want a restraint from this Court,
24 they should make a motion, which we'd like to oppose, and
25 perhaps we can do that in connection with a briefing that we

daggtirc                          Conference

1  discussed.

2              THE COURT:  Am I wrong:  They already have a
3  restraint, right?

4              The question is, if I think his point was simply, if I
5  understood it, if you persuade me that the restraint was
6  improperly granted in the first instance, that I should do the
7  same as Judge Carter, Judge Rakoff, and Judge Preska did and
8  stay the vacatur of the restraining order pending the Second
9  Circuit's decision; is that correct?

10             MR. COPLEY:  That is correct, your Honor.

11             THE COURT:  I take it your argument is that I, A,
12 should vacate it, and, B, should not then stay the vacatur.

13             MR. DAVIES:  That's certainly right.

14             What Judge Preska did in *Shaheen Sports* was just to
15 give plaintiff a short extension of an existing preliminary
16 injunction so that that plaintiff could go ask the Second
17 Circuit for a further injunction pending appeal.

18             THE COURT:  What happened then?

19             MR. DAVIES:  What happened is that Judge Preska was
20 good enough to tell the plaintiff that it needed to move the
21 Second Circuit within ten days of the 1292(b).  Because it was
22 an interlocutory appeal, she sui sponte certified, and the
23 plaintiff apparently misunderstood, waited 30 days and then
24 appealed.  One of the grounds for the appeal was that Judge
25 Preska tried to reduce the appeal time to ten days, so the

1   appeal got dismissed for failure to timely file the petition.

2        In Judge Rakoff's case of *Motorola*, Judge Rakoff was

3   clear that because under Rule 69, in postjudgment proceedings,

4   state law governs, and you can't get a preliminary injunction.

5   That doesn't waive the separate entity rule.  He did stay a

6   decision pending appeal, but he also ordered the plaintiff to

7   post a million dollars' bond in case the bank in that case

8   would be harmed.  Ultimately, it went on appeal.

9        We think there are issues to be litigated on this

10   question.  There's no question of whether there should be a

11   stay pending appeal.  It's not quite as simple as Mr. Copley

12   perhaps said.

13        THE COURT:  Maybe they won't be able or willing, but

14   if they were willing to post a similar bond, would that do away

15   with this?

16        MR. DAVIES:  I don't think it would.  I don't think

17   there are grounds for the stay of an injunction.  There's

18   potential criminal regulatory liability in China.  So, a

19   monetary bond is part of the issue here.  But I just wanted to

20   throw out that there is this requirement of security, and they

21   can't just have an injunction or a stay without doing their

22   part of what's required to get a stay on the injunction.

23        MR. COPLEY:  We would disagree with that.  We think

24   5222 allows for restraint exactly like we're talking about,

25   without posting a bond.  There are significant differences

1   between this and the *Motorola* case where a bond was required.
2   One, the party there was *Motorola*, which is a
3   multibillion-dollar company.  I represent a 74-year-old
4   inventer who has been rendered destitute by the actions of
5   these wrongdoers.
6           The second point I would raise would be that there was
7   $1.3 billion at issue in the *Motorola* case that prompted the
8   $1 million bond; and here, the amount is much less.
9           So far, the Industrial & Commercial Bank of China has
10  failed to disclose whether and how much is in any of these
11  accounts, so I don't know how the Court can even set a bond
12  when Industrial & Commercial Bank of China is the only one that
13  can make that disclosure.
14          MR. DAVIES:  Maybe this is something we should be
15  briefing as part of the motion practice we're discussing.
16          THE COURT:  I was about to say that.
17          MR. DAVIES:  If there's going to be effectively a
18  cross-motion in the papers, in their papers, we suggested
19  filing our papers October 25.  And they would oppose
20  November 8.  Perhaps we can have two weeks to reply and also
21  respond to the cross-motion.
22          MR. COPLEY:  We don't think a cross-motion is
23  necessary.  We have a right under 5222.  They're arguing for
24  Judge Carter's opinion to be applied here.  Judge Carter's
25  opinion should be applied in all respects, meaning the

1    restraining order stays in effect as it was issued under 5222

2    until the Second Circuit rules.  That's what Judge Carter did;

3    and that's what this Court should do.  We don't think we have

4    to make an affirmative motion for an injunction because 5222

5    gives us what we seek.

6              THE COURT:  Except in Judge Carter's case, as I think

7    I see on the docket, is after his decision on the restraining

8    order itself.  There was a separate motion to stay.  I think

9    that may be what Mr. Davies is driving at, that if he prevailed

10   on the merits, it would essentially be your motion to stay my

11   vacatur of the restraining order.

12             MR. COPLEY:  I'm not sure we need all of the separate

13   steps.  We can make the argument in our motion to their motion

14   to vacate that any ruling vacating that should be stayed.  I'm

15   not sure we need extra rounds of briefing.  We can.  I would

16   just ask if we're making that motion, that we would get a reply

17   brief, as well.  So, there would be four, rather than three, if

18   we're going to make an affirmative motion.

19             THE COURT:  Mr. Davies, that, at a minimum, sounds

20   reasonable to me.  My question to you is, it seems like

21   everybody knows what the arguments and the issues are.  Can we

22   not do this in the three briefs you proposed and have you

23   address in your opening brief, A, the merits of the restraining

24   order itself and, B, if I agree with you, why I should not stay

25   my order vacating the restraining order.  Then we'll them

1  respond, A, on the merits and, B, on why I should stay it if I
2  disagree with them, and then you'll have an opportunity to
3  reply and do it that way.
4          MR. DAVIES:  I think that makes sense, your Honor.
5  Can I just suggest, especially in the opening brief, a couple
6  of days, we can incorporate the stay piece into our opening
7  brief.
8          THE COURT:  That's fine with me.  I think the longer
9  we put this out, the more likely it is the Second Circuit will
10 resolve this problem for me.  Anyway, there you have it.
11         How about if I give you an extra week?
12         MR. DAVIES:  November 1.
13         THE COURT:  November 1, November 15, and then
14 November 22.
15         MR. DAVIES:  Right before Thanksgiving.
16         THE COURT:  It is before Thanksgiving, not after;
17 that's a material difference.  Is everyone on the same page
18 about both the schedule and what the briefs will be addressing?
19         MR. COPLEY:  Yes, thank you.
20         MR. DAVIES:  Yes.  Thank you very much.
21         THE COURT:  Is there anything else to address here?
22         MR. COPELY:  Nothing from us.
23         THE COURT:  One question I have about the
24 miscellaneous matter is, is this the sole issue in the
25 miscellaneous matter?  I ask that because while I agreed to

daggtirc                        Conference

1   take the matter because of the overlap with the case that had
2   been assigned to me, I guess my instinct is it might make sense
3   for me to have it formally reassigned to me, assuming it has
4   not already been formally reassigned.  On the other hand, I
5   don't want to inadvertently invite more than I anticipated
6   getting.
7            MR. COPLEY:  Yes, your Honor.  In the interest of full
8   disclosure, we know of three cases.  There's the Bank of China
9   case already before Judge Carter, there's this case, and then
10  we have served a restraining notice on Agricultural Bank of
11  China, which is another bank.  So, they may very well take an
12  approach similar to Industrial & Commercial Bank of China here
13  and file a motion to vacate.
14           THE COURT:  That wasn't what I was driving at.
15           MR. COPLEY:  Sorry.
16           THE COURT:  My question and my concern is if you're
17  filing papers in the miscellaneous matter, it's a purely
18  logistical concern.  Right now, it's assigned to Judge Part One
19  a fictional character no one has ever met.  The problem is I
20  won't get electronic notification of filings in that case.
21           My instinct is, I should have the clerk's office
22  formally reassign it to me so when you file things, I will
23  actually get notice that they have been filed.
24           My only concern is, if I am doing that to litigate
25  this issue, but this is the tail and I don't know about the dog

```
daggtirc                       Conference
```

1   in this case, I just want to understand what I'm getting myself
2   into.
3            MR. COPLEY:  Yes.  I guess my response would be if the
4   Second Circuit comes down against us, there's not going to be
5   very much for your Honor to do.  If it comes down in our favor,
6   we obviously will be seeking a turnover order.  I imagine there
7   will be some discovery fights.
8            THE COURT:  But that's in the civil case that's
9   already assigned.
10           MR. COPLEY:  Correct.
11           THE COURT:  The litigation and the restraining order
12  case, the miscellaneous matter, I take it the full extent of it
13  is this motion; is that correct?
14           MR. COPLEY:  That's on the docket right now, yes.
15           THE COURT:  I will have the clerk's office reassign
16  that to me so I get notified of any filings in that case.
17           Is there anything else?
18           MR. COPLEY:  Not from the plaintiffs.
19           MR. DAVIES:  Nothing, your Honor.  Thank you.
20           THE COURT:  Thank you very much.  We are adjourned.
21           (Adjourned)
22
23
24
25